UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BUCHANAN ENERGY (N), LLC, a Delaware limited liability company, | ) ) ) | No. 15 CV 3851 |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| LAKE BLUFF HOLDINGS, LLC, an Illinois limited liability company, | ) ) ) ) | |
| Defendant. | ) ) | September 2, 2015 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Buchanan Energy (N), LLC ("Buchanan") brought this suit against Defendant Lake Bluff Holdings, LLC ("Lake Bluff"), alleging that Buchanan is entitled to purchase real property from Lake Bluff pursuant to a purchase option in a lease agreement for a lower price than Lake Bluff's valuation. Before the court is Lake Bluff's motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Lake Bluff's motion is denied:

**Facts**

Buchanan and Lake Bluff are successor parties in interest to a lease agreement dated September 22, 1989, ("the Lease"). (R. 1, Compl. ¶ 9; R. 1-1, Ex. A.) Buchanan, a gasoline retailer, is the successor tenant to the Lease pursuant to a December 9, 2010 assignment. (Id. ¶¶ 2, 11.) Lake Bluff is the successor landlord. (Id. ¶ 10.) The original landlord ("predecessor landlord") leased real property located in Lake Bluff, Illinois, to the original tenant, Mobil Oil Corporation

("predecessor tenant") (together, "predecessor parties"). (R. 1, Compl. ¶ 9; R. 1-1, Ex. A ¶ 1.) The Lease describes the leased property as:

> that certain parcel of land situated at NWC of Waukegan Rd. and Rockland Rd. Street, in the County of Lake, State of Illinois . . . together with any improvements thereon and the appurtenances and all right, title and interest of Landlord in and to land lying in all streets, highways and rights of way abutting on or appurtenant to the premises (all of said leased property [being] referred to in this lease as the "premises").

(R. 1-1, Ex. A ¶ 1.) The predecessor parties recorded a Memorandum of Lease, (Id., Ex. B), in accordance with the terms of the Lease. (Id., Ex. A ¶ 24.) The Memorandum of Lease describes the "premises covered by said lease" as "all that certain parcel of land situated at NWC of Waukegan Road and Rockland Road in the County of Lake and State of Illinois . . . ." (Id., Ex. B ¶ 1.)

The Lease anticipates that the tenant will use the leased property as a "retail drive-in facility . . . or for continued use for the storage and sale of petroleum and other products and services to be sold at the premises." (Id., Ex. A ¶ 9.) The Lease further provides that, in addition to the land itself, "buildings, improvements and equipment" may exist on the property and/or be added. (Id. ¶¶ 7-9.) For example, the Lease notes that as of September 22, 1989, a sign existed on the property and was required to be removed as a condition to the Lease. (Id. ¶ 9.) Additionally, the Lease contemplates that the tenant will add improvements to the land to operate a gas station. (Id. ¶¶ 3, 7-10.) According to Buchanan, the predecessor tenant did just that—it erected a gas station and convenience store after the Lease commenced. (R. 1, Compl. ¶ 6.)

2

Under the Lease, any "buildings, improvements, and equipment" erected or installed by the tenant on the property "remain the property of Tenant." (R. 1-1, Ex. A ¶ 8.) The Memorandum of Lease restates this provision as follows:

> Said lease grants Tenant the right to erect and install on the said premises such buildings, improvements and equipment as it may require . . . . No buildings, improvements and equipment erected, installed or owned by Tenant shall become a part of the real estate, but shall be and remain the property of Tenant . . . .

(Id., Ex. B ¶ 4.) Furthermore, the Lease specifies that the tenant "shall have the right to remove, change, demolish, replace or abandon any or all of [such buildings, improvements and equipment] or to enter to remove any or all of same at any time while this lease is in effect and for thirty (30) days thereafter." (Id., Ex. A ¶ 8.)

The Lease also includes a purchase option, permitting the tenant "to purchase the premises free and clear of all liens and encumbrances for the sum" set forth in the Rider for Purchase option. (Id. ¶ 12.) The Lease Rider, which was "attached to and made part of" the Lease, in turn states that the tenant "shall have the option to purchase the premises at any time at a purchase price determined by taking the average of three (3) appraisals." (Id., Ex. A at 12.) On September 8, 2014, Buchanan provided written notice to Lake Bluff regarding its intent to exercise this purchase option. (R. 1, Compl. ¶ 26; R. 1-1, Ex. C.)

However, the parties dispute the applicable valuation for the subject property—namely, whether the appraisers should have valued only the land itself (Buchanan's position) or the land plus improvements currently thereon, including improvements added by the tenant (Lake Bluff's position). (R. 1, Compl. ¶¶ 24, 31,

3

35-36, 45, 46.) Based upon the appraisers' valuations of just the land, Buchanan claims that the option purchase price should be $487,775. (Id. ¶¶ 32-36; R. 29, Pl.'s Resp. at 3 n.1.) Lake Bluff, on the other hand, calculates the purchase price in the range of $1,070,000-$1,200,000 based upon the appraisals' valuation of the "as-is, improved" property. (R. 17, Def.'s Mem. at 2; R. 1, Compl. ¶ 45.)

## Analysis

A defendant is entitled to dismissal of an action if the complaint's allegations are insufficient to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Although at this stage all well-pleaded facts are taken as true and reasonable inferences are viewed in the light most favorable to the plaintiff, *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010), the factual allegations must "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a complaint will survive a motion to dismiss if it gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," and if it includes allegations that are "enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotation omitted).

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Typically, the court would be confined to the allegations in the complaint at the Rule 12(b)(6) stage. *See McCready v. Ebay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). But where "a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."

4

*Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (citing the "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*") (emphasis in original) (internal quotation omitted). The court is "'not bound to accept [plaintiff's] allegations as to the effect of the [document attached to the complaint], but can independently examine the document and form [its] own conclusions as to the proper construction and meaning to be given the material.'" *McCready*, 453 F.3d at 891 (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).)

In the present case, the parties dispute the meaning of contractual language in the Lease. Because this court's jurisdiction is based upon diversity, Illinois law governs the construction of the Lease. *See Berrey v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 594 (7th Cir. 2014). Under Illinois law, rules of contract interpretation apply when construing provisions in a lease. *See Urban Sites of Chi., LLC v. Crown Castle USA*, 2012 IL App. (1st) 111880, ¶ 24. "In construing a contract, the court must determine and give effect to the parties' intentions at the time they entered into the agreement." *Id.* Where there is no ambiguity in the contractual language, "the intention of the parties must be ascertained by the language used, not by constructions urged by the parties." *Napleton v. Ray Buick, Inc.*, 704 N.E.2d 864, 871 (Ill. App. Ct. 1998). The contractual language must be considered "as a whole, viewing each part in light of the others." *Szafranski v. Dunston*, 2015 IL App. (1st) 122975-B, ¶ 95. "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision

5

standing by itself." *Id.* And, importantly, courts should "construe a contract reasonably to avoid absurd results." *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 902 N.E.2d 1178, 1190 (Ill. App. Ct. 2009).

Here, Buchanan has adequately stated a claim for relief. Buchanan alleges that it lawfully exercised a purchase option to the Lease, and that it has equitable ownership of the subject property as a result. (R. 1, Compl. ¶¶ 26, 47, 51.) Taking all well-pleaded facts as true, and drawing reasonable inferences in the light most favorable to Buchanan, *see McGowan*, 612 F.3d at 638, the court finds that Buchanan has provided "fair notice" of its claims and surpassed the "speculative level" sufficient to "raise a right to relief," *see Twombly*, 550 U.S. at 570. Indeed, even Lake Bluff acknowledges the exhaustive nature of Buchanan's allegations. (See R. 17, Def.'s Mem. at 2 ("From this simple set of facts, Plaintiff sets forth a sixty-seven paragraph Complaint . . . .").)

The question for the court thus becomes whether the documents that Buchanan attached to the complaint negate its claims. Buchanan attached, *inter alia*, the Lease and Memorandum of Lease to the complaint. (R. 1-1, 1-2, Compl., Exs. A & B.) The purchase option provisions in the Lease and Lease Rider refer to the tenant's option to purchase the "premises" for the sum determined by averaging three appraisals—one chosen by the landlord, one chosen by the tenant, and one "mutually agreed upon" by both parties. (R. 1-1, Ex. A ¶¶ 1, 12, Lease Rider; Id., Ex. B ¶ 1.) The Lease defines "premises" as the land "together with any improvements thereon . . . (all of said leased property [being] referred to in this

6

lease as the 'premises')." (Id., Ex. A ¶ 1.) The parties disagree on the meaning of "premises."

Lake Bluff maintains that the definition of "premises" unambiguously sets the purchase option price at the current "improved" property value. (R. 17, Def.'s Mem. at 2, 4-6.) However, the written instrument attached to the complaint—the Lease—does not expressly support Lake Bluff's contention. *See Thompson*, 300 F.3d at 754. To be sure, the definition of "premises" in the Lease nowhere states that the leased property includes the land and any improvements thereon *at the time the sum of the purchase option is determined*. Lake Bluff argues that because the Lease does not exclude "future property conditions and improvements," then such improvements must be included. (R. 30, Def.'s Reply at 3.) But this court cannot "add language or matters to a contract about which the instrument itself is silent, [] or add words or terms to an agreement to change the plain meaning of the parties as expressed in the agreement." *Dean Mgmt., Inc. v. TBS Constr., Inc.*, 790 N.E.2d 934, 939 (Ill. App. Ct. 2003). Accordingly, Buchanan's claims cannot be dismissed on the basis that "the exhibit [in fact] trumps the allegations." *See Thompson*, 300 F.3d at 754 (emphasis omitted).

Besides, Buchanan makes a colorable claim that "premises" is reasonably susceptible to another definition. Buchanan asserts that when considering the Lease "as a whole," *see Szafranski*, 2015 IL App. (1st) 122975-B, ¶ 95, the value of the "premises" is based solely upon property that was leased to the tenant,

7

including the land and any improvements thereon *at the time the Lease was made*.[1] (R. 29, Pl.'s Resp. at 7; R. 1-1, Ex. A ¶ 1 (referring to "said leased property" in the definition of "premises").) For support, Buchanan points to language in the Lease showing that the predecessor parties intended improvements added by the tenant to remain the property of the tenant. (R. 1-1, Ex. A ¶ 8 (permitting tenant to add "buildings, improvements and equipment that it may require, all such to be and remain the property of Tenant").) Under the Lease, the tenant also has the right to "remove, change, demolish, replace or abandon" improvements. (Id.) Although Lake Bluff asserts that these provisions are "to the benefit of the landlord given the high environmental remediation and other costs associated with their removal," (R. 30, Def.'s Reply at 5), paragraph 8 of the Lease speaks only of the tenant's use of the land, not in terms of benefits to the landlord, (R. 1-1, Ex. A ¶ 8). Thus, viewing the definition of "premises" in light of other language in the Lease lends weight to Buchanan's competing position. *See Szafranski*, 2015 IL App. (1st) 122975-B, ¶ 95.

Furthermore, the Memorandum of Lease supports Buchanan's interpretation. The Memorandum of Lease was made "for the purpose of recording" the Lease in a short form. (R. 1-1, Ex. B.) The document describes the "premises covered by said lease" as the land itself, without referring to improvements thereto. (Id. ¶ 1.) The Memorandum of Lease further contemplates that the tenant will add improvements to store and sell gasoline, and such additions shall not "become a part of the real

---

[1] It is unclear from the current record the extent to which buildings, improvements, or equipment were located on the leased property as of September 22, 1989, with the exception of at least one sign. (R. 1-1, Ex. A ¶ 9.)

8

estate, but shall be and remain the property of Tenant . . . ." (Id. ¶ 4.) Although the Lease expressly states that the Memorandum of Lease "shall not, under any circumstances, be deemed to modify or amend any of the provisions of this lease," (id., Ex. A ¶ 24), the Memorandum of Lease reasonably may be read as shedding light on, rather than as modifying or amending, the predecessor parties' intent.

Consistent with the terms of the Lease, the predecessor tenant added a gas station and convenience store. (R. 1, Compl. ¶ 6.) Having already expended money to add these improvements, the tenant now faces a second charge for the same improvements if Lake Bluff's interpretation of "premises" is adopted. (R. 29, Pl.'s Resp. at 8.) Moreover, if the Lease is terminated, the tenant may remove such improvements immediately, thereby nullifying any value of such improvements. (R. 1-1, Ex. A ¶ 8.) Although Lake Bluff argues that Buchanan may abandon improvements made to the property by the tenant, (R. 30, Def.'s Reply 5), Buchanan has not represented that it has such an intent and, in any event, such a speculative argument is not a sufficient ground for dismissal of Buchanan's claims. Furthermore, Lake Bluff's citation to Illinois law defining the "fair market value of improved property," (id. at 4-5), is a red herring. The central question here is whether "premises"—as defined and used in the Lease—includes improvements added by the tenant for purposes of valuing the sum for the purchase option, not what value those improvements render to the property. At this stage, the court finds that Buchanan has sufficiently stated a claim on which to proceed.

## Conclusion

For the foregoing reasons, Lake Bluff's motion to dismiss is denied.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**