## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BUCHANAN ENERGY (N), LLC, a Delaware limited liability company, | ) ) ) | No. 15 CV 3851 |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| LAKE BLUFF HOLDINGS, LLC, an Illinois limited liability company, | ) ) ) ) | |
| Defendant. | ) ) | April 4, 2017 |

## MEMORANDUM OPINION and ORDER

In this declaratory judgment action, which is before the court on consent, see 28 U.S.C. § 636(c), Plaintiff Buchanan Energy (N), LLC ("Buchanan") and Defendant Lake Bluff Holdings, LLC ("Lake Bluff") have filed competing motions *in limine* to exclude the opinions of the other party's real estate appraiser. Buchanan seeks to bar expert opinions from Lake Bluff's appraiser, Michael MaRous. Lake Bluff similarly moves to exclude expert opinions from Buchanan's appraiser, Daniel P. Currier. For the following reasons, both motions to exclude are denied:

## Introduction

Buchanan seeks a declaratory judgment that it is entitled to purchase real property in Lake County, Illinois ("the Property")[1] from Lake Bluff pursuant to a

---

[1] The Property is defined in the lease agreement ("Lease") between the parties. (R. 1-1, Compl. Ex. A ¶ 1.)

purchase option in a Lease.  (R. 57, Pl.'s Mot. at 1.)[2]  The purchase option sets the price based upon the average of three appraisals:  one from an appraiser retained by Buchanan; one from an appraiser retained by Lake Bluff; and one from a joint appraiser.  (Id. at 1, 5 n.1.)  The purchase option does not specify the methodology to be used or the facts and assumptions to be considered by the appraisers.  (R. 1-1, Compl. Ex. A at 12.)  The parties' primary dispute in this lawsuit relates to whether the appraisers should value the Property with or without improvements.  (R. 57, Pl.'s Mot. at 1; see also R. 42, Jan. 25, 2016 Min. Entry.)  Buchanan argues that the valuation should not include any improvements, while Lake Bluff asserts that the valuation should include the improved gas station on the Property.  (R. 57, Pl.'s Mot. at 1-2.)

In calculating the "vacant land" value, Buchanan relies upon valuations from its appraiser Currier for $295,000, Lake Bluff's appraiser MaRous for $675,000, and the joint appraiser for $493,100.[3]  (Id. at 7.)  "[B]y simply averaging the appraisers' vacant land values," Buchanan claims that the purchase option price should be $487,775.  (Id. at 1, 5 n.1.)  Lake Bluff, on the other hand, calculates the price at $1,135,000 by averaging the "as is, improved" valuations from its appraiser for $1,200,000 and the joint appraiser for $1,070,000.  (Id. at 2, 7.)  All appraisers used

---

[2]  Lake Bluff asks the court to strike Buchanan's motion to exclude "as it plainly violates Local Rules 5.2(c) and 7.1."  (R. 60, Def.'s Resp. at 1 n.1.)  The court declines to grant Lake Bluff's request, because striking Buchanan's motion would not expedite the work of the court.  *See Transcapp Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*, No. 08 CV 723, 2009 WL 3260014, at *2 (N.D. Ill. Oct. 9, 2009).

[3]  The joint appraiser had initially valued the Property at $535,000 but recalculated the value after noting an error in the square footage.  (R. 57, Pl.'s Mot. at 7.)

the sales comparison approach in determining their valuations. (Id. at 6, Ex. 1, MaRous Dep. 124:6-8, June 16, 2016; R. 58, Def.'s Mot., Ex. 2, Currier Dep. 109:11-14, Aug. 11, 2016.) And all appraisers were retained and performed their valuations pursuant to Buchanan's exercise of its purchase option before the present litigation commenced. (R. 57, Pl.'s Mot. at 2.)

Both parties challenge allegedly unreliable data and faulty methodology used by the other party's appraiser. (Id. at 12-16; R. 58, Def.'s Mot. at 3-8.) Buchanan criticizes, *inter alia*, the following purported errors in MaRous's analysis:

- MaRous assumed that Lake Bluff had purchased the gas station improvements on the Property. (R. 57, Pl.'s Mot. at 12-13, Ex. 1, MaRous Dep. 33:11-37:12; 108:2-20.)

- Lake Bluff's counsel directed MaRous to appraise the Property under its "highest and best use . . . [as] a successful operating gas station." (Id. at 13, Ex. 1, MaRous Dep. 21:1-8; 27:2-12.)

- MaRous did not mention Buchanan's exercise of its option to purchase the Property, even though the Uniform Standards of Professional Appraisal Practice ("USPAP") "require the appraiser to report and analyze any option involving the property during the past three years." (Id. at Ex. 1, MaRous Dep. 90:2-8; 92:16-24; 102:5-103:14.)

- MaRous initially estimated the vacant Property value to be close to the as-improved Property value but then offered dramatically different valuations. (Id. at Ex. 1, MaRous Dep. 84:13-85:16.)

- MaRous considered monthly gallonage sales showing gasoline volume sold. (Id. at 14, Ex. 1, MaRous Dep. 81:13-84:12; 101:20-102:4.)

- Before MaRous finalized his report, Lake Bluff's attorney gave MaRous Buchanan's appraisal, citing its "ridiculous value of $295,000" and advising that Lake Bluff would need to pursue litigation to "throw[] out" the appraisal. (Id. at 14, Ex. 1, MaRous Dep. 73:2-75:16.)

- MaRous testified that he considered rental properties in his valuation as a consideration of "market activity," but he did not cite any specific rental properties. (Id., Ex. 1, MaRous Dep. 98:8-100:18.)

- MaRous used non-comparable sales, including multi-residential land, an outlot around a Home Depot, and incorporated land, in determining his valuation. (Id., Ex. 1, MaRous Dep. 125:21-127:23.)

- MaRous cited comparable land sales ranging from $14.95 per square foot ("psf") to $33.78 psf, but then found the Property's land value to be $34.20, higher than the cited range. (Id., Ex. 1, MaRous Dep. 124:19-23; 128:15-129:17.)

- MaRous cited improved comparable sales of $335 psf, $328 psf, $985 psf, $303 psf, and $1,038 psf, but then valued the improved Property at $1,172 psf. (Id. at 15, Ex. 1, MaRous Dep. 134:21-136:24.)

- MaRous cited improved comparable sales that included gas stations, even though MaRous did not know who owned the improvements. (Id. at 14-15, Ex. 1, MaRous Dep. 130:20-22; 134:7-20.)

- MaRous made errors in his report, which he said he would correct but did not. (Id. at 15, Ex. 1, MaRous Dep. 134:10-148:17; 197:13-198:1.)

Lake Bluff in turn attacks the following alleged errors in Currier's analysis:

- Currier violated USPAP when he used a less-detailed form for his report. (R. 58, Def.'s Mot. at 4-5, Ex. 2, Currier Dep. 168:17-23; 171:17-20.) Currier's report did not include: "an in-depth analysis of the city in which the Property is located; local market conditions; local employment conditions; and sufficient comparative properties." (Id. at 5, Ex. 2, Currier Dep. 64:2-66:2; 99:17-101:1; 104:9-106:4; 167:14-22.)

- Currier relied upon residential market conditions in "economically depressed" areas, such as Peoria, Kankakee-Bradley, and Rockford, Illinois, instead of commercial market conditions in the "affluent" Lake Bluff area, in violation of USPAP. (Id. at 6-7, Ex. 2, Currier Dep. 106:21-107:19; 109:24-112:23; 129:2-132:8.)

- Currier used non-comparable sales, including Comparable 6 and properties outside of the geographically relevant area, in his valuation. (Id. at 7-8, Ex. 2, Currier Dep. 113:11-115:8; 126:22-129:1.)

4

## Facts

Buchanan and Lake Bluff are successor parties in interest to a Lease dated September 22, 1989. (R. 1, Compl. ¶¶ 9-11; R. 1-1, Ex. A.) Buchanan, a gasoline retailer, is the successor tenant to the Lease pursuant to a December 9, 2010 assignment. (R. 1, Compl. ¶¶ 2, 11.) Lake Bluff is the successor landlord. (Id. ¶ 10.) The Lease describes the leased Property as:

> that certain parcel of land situated at NWC of Waukegan Rd. and Rockland Rd. Street, in the County of Lake, State of Illinois . . . together with any improvements thereon and the appurtenances and all right, title and interest of Landlord in and to land lying in all streets, highways and rights of way abutting on or appurtenant to the premises (all of said leased property [being] referred to in this lease as the "premises").

(R. 1-1, Compl. Ex. A ¶ 1.) The predecessor parties recorded a Memorandum of Lease, (R. 1-1, Compl. Ex. B), in accordance with the terms of the Lease, (id. ¶ 24). The Memorandum of Lease describes the "premises covered by said lease" as "all that certain parcel of land situated at NWC of Waukegan Road and Rockland Road in the County of Lake and State of Illinois . . . ." (Id., Compl. Ex. B ¶ 1.)

The Lease anticipates that the tenant will use the Property as a "retail drive-in facility . . . or for continued use for the storage and sale of petroleum and other products and services to be sold at the premises." (Id., Compl. Ex. A ¶ 9.) The Lease further provides that "buildings, improvements and equipment" may exist on the Property and/or be added. (Id. ¶¶ 7-9.) The Lease contemplates that the tenant will add improvements to the land to operate a gas station. (Id. ¶¶ 3, 7-10.)

According to Buchanan, the predecessor tenant did just that—it erected a gas station and convenience store after the Lease commenced. (R. 1, Compl. ¶ 6.)

Under the Lease, any "buildings, improvements, and equipment" erected or installed by the tenant on the Property "remain the property of Tenant." (R. 1-1, Compl. Ex. A ¶ 8.) The Memorandum of Lease restates this provision as follows:

> Said lease grants Tenant the right to erect and install on the said premises such buildings, improvements and equipment as it may require . . . . No buildings, improvements and equipment erected, installed or owned by Tenant shall become a part of the real estate, but shall be and remain the property of Tenant . . . .

(Id., Compl. Ex. B ¶ 4.) Furthermore, the Lease specifies that the tenant "shall have the right to remove, change, demolish, replace or abandon any or all of [such buildings, improvements and equipment] or to enter to remove any or all of same at any time while this lease is in effect and for thirty (30) days thereafter." (Id., Compl. Ex. A ¶ 8.)

The Lease also includes a purchase option, permitting the tenant "to purchase the premises free and clear of all liens and encumbrances for the sum" set forth in the Rider for Purchase option. (Id. ¶ 12.) The Lease Rider, which was "attached to and made part of" the Lease, states that the tenant "shall have the option to purchase the premises at any time at a purchase price determined by taking the average of three (3) appraisals." (Id.) On September 8, 2014, Buchanan provided written notice to Lake Bluff regarding its intent to exercise the purchase option. (R. 1, Compl. ¶ 26; R. 1-1, Ex. C.) But the parties remain at odds over the

applicable valuation for the Property. (R. 1, Compl. ¶¶ 31-36; R. 34, Countercl. ¶¶ 19-26.)

## Legal Standards

Included in the district court's inherent authority to manage trials is the "broad discretion" to rule on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002) ("[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*. We reverse these rulings only for an abuse of discretion."). Evidence should be excluded only when it is "clearly inadmissible on all possible grounds." *Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). Where admissibility decisions may be better informed by the context, foundation, and relevance of the contested evidence, evidentiary rulings must be deferred until trial. *Id.* In such a case, "[a] pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Delgado v. Mak*, No. 06 CV 3757, 2008 WL 4367458, at *1 (N.D. Ill. March 31, 2008). That is because a court may revisit evidentiary rulings during trial. *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

Similarly, a district court enjoys "broad latitude" in determining the admissibility of expert opinions, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999), provided that the court applies the legal framework set forth in Federal Rule of Evidence 702, *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 430-31 (7th

Cir. 2013); *Smith v. Ford Motor Co.*, 215 F.3d 713, 717 (7th Cir. 2000). Rule 702 permits testimony from a qualified expert if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589-91 (1993). In short, a proposed expert must be qualified, and the expert's testimony must be "relevant and reliable." *Kumho Tire*, 526 U.S. at 141. The expert's proponent bears the burden of showing that the expert satisfies Rule 702. *See Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

To satisfy the relevance requirement, the expert's testimony must "assist the trier of fact with its analysis of any of the issues involved in the case." *Smith*, 215 F.3d at 718. To establish reliability, the expert's opinion must be reliably based in the knowledge and experience of the applicable discipline. *See Kumho Tire*, 526 U.S. at 149. In determining reliability, courts may consider whether the theory "can be (and has been) tested," whether the theory "has been subjected to peer review and publication," whether the theory "has a known potential rate of error," and whether the theory is "generally accepted in the relevant scientific community." *Schultz*, 721 F.3d at 431 (citing *Daubert,* 509 U.S. at 593-94). "[T]he key to the gate [for expert testimony] is not the ultimate correctness of the expert's conclusions."

*Id.* Rather, "it is the soundness and care with which the expert arrived at her opinion," focusing 'solely on principles and methodology, not on the conclusions they generate.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). If the expert's methodology is reliable, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

The latitude afforded to a court in determining admissibility under Rule 702 is "particularly broad in a bench trial, where 'the usual concerns of [Rule 702]—keeping unreliable expert testimony from the jury—are not present.'" *Fletcher v. Doig*, 196 F. Supp. 3d 817, 820-21 (N.D. Ill. 2016) (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010)). The Seventh Circuit has instructed that "[w]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006).

## Analysis

In seeking to exclude the opponent's expert opinion, neither party contests the qualifications or experience of MaRous or Currier. (R. 59, Pl.'s Resp. at 2, 12; R. 60, Def.'s Resp. at 6.) MaRous is a real estate appraiser licensed in Illinois who has appraised properties for 40 years. (R. 57, Pl.'s Mot., Ex. 1, MaRous Dep. 7:13-8:21.) Currier also is an appraiser licensed in Illinois who has more than 25 years

of experience appraising real estate. (R. 59, Pl.'s Resp. at 12.) Both appraisers are sufficiently qualified to value the Property for purposes of Rule 702.

Additionally, neither party directly challenges the relevance of MaRous's or Currier's appraisals. (R. 57, Pl.'s Mot. at 7-15; R. 58, Def.'s Mot. at 2-8.) In the introductory sections of its motion and response brief, Buchanan suggests that the appraisals are of no significance because "[t]his is not a valuation case." (R. 57, Pl.'s Mot. at 1; see also R. 59, Pl.'s Resp. at 2-3.) But Buchanan does not dispute the relevance of the appraisals in its argument. (R. 57, Pl.'s Mot. at 7-15; see also R. 59, Pl.'s Resp. at 4-15.) Under Rule 702, it matters not whether an expert opines on the ultimate issue to be resolved. *See Smith*, 215 F.3d at 718. Instead, the key inquiry is "whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case." *Id.* Here, the appraisers' testimony will assist the trier of fact with analysis of Buchanan's specific performance and declaratory judgment claims, including whether Buchanan properly exercised its rights under the purchase option, and Lake Bluff's eviction and declaratory judgment counterclaims, including whether Buchanan failed to tender a valid appraisal. (See R. 1, Compl. ¶¶ 32-45; R. 34, Countercl. ¶¶ 19-33; R. 62, Def.'s Reply at 1 n.1.) As such, MaRous's and Currier's opinions satisfy the Rule 702 relevancy standard.

The court thus turns to the reliability of the experts' methodology. As an initial matter, Buchanan contends that *Daubert* and *Kumho Tire*, insofar as they establish standards of evidentiary reliability, "are not applicable" to appraisers. (R. 57, Pl.'s Mot. at 7-9.) Buchanan cites case law explaining that "[c]ommercial

10

real estate appraisal is not a branch of social science," and therefore, "the court need not apply the same standards of methodological rigor required of social scientific inquiry." (Id. at 8); *Hawthorne Partners v. AT&T Techs., Inc.*, No. 91 CV 7167, 1993 WL 311916, at *4 (N.D. Ill. Aug. 11, 1993). Other courts similarly have noted the inexact nature of appraising. *See United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("The value of property . . . is largely a matter of opinion. . . . [T]here are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller."); *In re Jones*, No. 03 BR 84129, 2004 WL 298612, at *1 (Bankr. C.D. Ill. Feb. 5, 2004) ("[A]ppraising is art, not science.").[4]

Although "a somewhat different threshold inquiry is necessary" for experiential experts like MaRous and Currier, the appraisers' expert opinions are still subject to Rule 702. *See Schultz*, 721 F.3d at 431. In *Kumho Tire*, 526 U.S. at 147, the Supreme Court held that the court's "basic gatekeeping obligation" under Rule 702 "applies to all expert testimony." The Court found that "there are many different kinds of experts, and many different kinds of expertise," including experts in "land valuation." *Id.* at 150. The Court cautioned, however, that "the Rule 702 inquiry [is] 'a flexible one'" and "must be 'tied to the facts'" of the case. *Id.* (quoting *Daubert*, 509 U.S. at 594). The *Daubert* factors "may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* (citation omitted).

---

[4] As one scholar wrote, "I have never seen an appraiser leave the witness stand unscathed. There are always bruises and battle wounds. Appraising is an opinion." Elliott W. Weinstein, *The Art of Testimony: The Real Estate Appraiser, The Appraisal and the Expertise of the Expert Witness*, Am. Bankr. Inst. J., Oct. 15, 1996, at 32.

Applying the Rule 702 framework to the facts of this case, the court finds that MaRous and Currier used sufficiently reliable methodology to withstand Rule 702 scrutiny. Both appraisers used the sales comparison approach in their valuation analyses. (R. 57, Pl.'s Mot. at 6, Ex. 1, MaRous Dep. 124:6-8; R. 58, Def.'s Mot., Ex. 2, Currier Dep. 109:11-14.) The parties do not dispute that the sales comparison approach was the proper methodology to appraise the Property. (R. 59, Pl.'s Resp. at 2; R. 60, Def.'s Resp. at 9.) Indeed, utilization of the sales comparison approach complies with USPAP. (R. 60, Def.'s Resp. at 9.) *See also In re Jones*, 2004 WL 298612, at *2 (noting, in the context of residential real estate, that the "sales comparison approach is the most reliable method for appraising the value"). The sales comparison approach thus qualifies as a "generally accepted [methodology] in the relevant scientific community" of real property valuation. *Schultz*, 721 F.3d at 431 (citing *Daubert*, 509 U.S. at 593-94).

Rather than attacking the methodology used by MaRous and Currier, the parties condemn the appraisers' reliance on unsupported facts and their execution of the sales comparison approach as outlined on pages three and four above. The court first addresses Buchanan's attacks on MaRous. Buchanan challenges the assumptions upon which MaRous relies, including that the gas station improvements would remain on the Property at the end of the Lease. (R. 57, Pl.'s Mot. at 13-14.) Buchanan also alleges that MaRous committed a USPAP violation by not considering Buchanan's purchase option. (Id. at 13.) And Buchanan suggests that MaRous was improperly biased by Lake Bluff's instructions for the

12

appraisal. (Id. at 14.) Buchanan's criticisms are directed toward the bases and sources of MaRous's opinion, and his alleged bias—not toward the methodology itself. These types of attacks affect the weight that should be accorded to MaRous's opinion, not its admissibility. *See Metavante*, 619 F.3d at 762 (holding that attacks on the quality of an expert's testimony "do not go to admissibility but to the appropriate weight that should be accorded to the evidence"); *14.38 Acres of Land*, 80 F.3d at 1077 ("[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.").

It is not this court's role as gatekeeper "to assess the evidence itself" or the correctness of MaRous's assumptions or conclusions. *Fletcher*, 196 F. Supp. 3d at 824 (quoting *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 782 F.3d 353, 360 (7th Cir. 2015)). Instead, "the soundness of the factual underpinnings of [MaRous's] analysis and the correctness of [his] conclusions based on that analysis are factual matters to be determined by the trier of fact." *Kawasaki*, 782 F.3d at 360. Rather than excluding MaRous's testimony, "grueling cross examination" and presentation of contrary evidence during trial are the appropriate means to attacking MaRous's opinion. *See Schultz*, 721 F.3d at 431; *see also Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) ("Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination.") (quoting *Daubert*, 509 U.S. at 596).

In *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 486 F. Supp. 2d 741, 749 (N.D. Ill. 2007), defendants asked the court to exclude an appraiser's opinion

that was "subjective, unreasoned, unsupported by market data, and inconsistent with the established methodology of the real estate profession." The court declined, finding that "[r]eliance on judgment and experience is an accepted appraisal technique." *Id.* While the court acknowledged that some of the appraiser's data sources "lacked credibility," the court found that such criticism "is a question of weight rather than admissibility." *Id.; see also Powell v. Tosh*, 942 F. Supp. 2d 678, 690 (W.D. Ky. 2013) (denying motion to exclude appraiser's opinion, purportedly based upon selective and unreliable data, because such a challenge goes to the weight, not admissibility, of the appraiser's testimony). The same reasoning applies to the present matter.

By contrast, Buchanan's reliance upon *Reeves v. Commonwealth Edison Co.*, No. 06 CV 5540, 2008 WL 239030 (N.D. Ill. Jan. 28, 2008), is misplaced. (See R. 61, Pl.'s Reply at 2-3.) In *Reeves*, 2008 WL 239030, at *8-9, the court excluded two real estate appraisals based upon the extraordinary assumption that the property to be valued was contaminated. In the same opinion, the court had found "no evidence" that the property was contaminated and declared inadmissible an expert opinion— reporting that the property was contaminated—because of flawed methodology. *Id.* at *2, *6-7. Here, MaRous used an acceptable appraisal methodology and relied upon an assumption that goes to the heart of this case—whether the Property should be valued with improvements. Federal Rule of Evidence 704(a) does not render an opinion "objectionable just because it embraces an ultimate issue." (See R. 60, Def.'s Resp. at 8.) And contrary to Buchanan's assertion, MaRous's reliance

14

upon a purportedly faulty assumption does not transform his appraisal into a legal opinion. (See R. 61, Pl.'s Reply at 3.) Accordingly, the court declines to exclude MaRous's testimony.

Lake Bluff's attacks on Currier are similar to those made against MaRous. Lake Bluff alleges that Currier improperly relied upon unreasoned market data and unsupported comparable sales. (R. 58, Def.'s Mot. at 6-8.) As explained with respect to similar complaints lodged against MaRous, disagreements about the factual underpinnings of Currier's opinion go to weight, not admissibility, and thus are matters for the trier of fact. *See Kawasaki*, 782 F.3d at 360. Indeed, even where an appraiser's data sources "lacked credibility," the *Guardian Pipeline* court declined to exclude an expert's opinion because such criticism was "a question of weight." 486 F. Supp. 2d at 749; *see also 14.38 Acres of Land*, 80 F.3d at 1077; *Powell*, 942 F. Supp. 2d at 690.

Lake Bluff also alleges that Currier violated USPAP Standard 2 by using an "antiquated"[5] appraisal form, (R. 62, Def.'s Reply at 5), and by failing to include the necessary content requirements, including an "in-depth analysis of the city in which the Property is located; local market conditions; and sufficient comparative properties," (R. 58, Def.'s Mot. at 2, 4-5). Lake Bluff's own expert, MaRous, performed a "full technical review" of Currier's work, and did not opine that Currier had committed any USPAP violations. (R. 59, Pl.'s Resp. at 9-10; see also R. 57, Pl.'s Mot. Ex. 1, MaRous Dep. at 173:9-20.) Furthermore, the State Appraisal

---

[5] The USPAP Standard 2 form requirement changed in January 2014, (R. 58, Def.'s Mot. at 4, Ex. 2, Currier Dep. 168:20-23, 171:17-173:11), the month before Currier submitted his appraisal, in February 2014, (id., Ex. 1).

Board has not levied any USPAP violations against Currier for his appraisal in this matter. (R. 59, Pl.'s Resp. at 10.) Lake Bluff thus seeks a finding from this court that Currier violated USPAP Standard 2, in an effort to have Currier's opinion declared inadmissible. (See R. 62, Def.'s Reply at 5-6.) But at the gatekeeping stage, the court may not determine factual matters. *See Fletcher*, 196 F. Supp. 3d at 824; *Kawasaki*, 782 F.3d at 360. Such a task is for the trier of fact.

In any event, Buchanan likens the parties' disagreement on the USPAP Standard 2 issue to one over form, not substance, because Currier was permitted to keep the content in his work file. (R. 59, Pl.'s Resp. at 10-11.) The parties dispute whether certain information should have been included within the body of Currier's report, as opposed to in his work file, and whether such information was present in Currier's work file. (Id.; see also R. 62, Def.'s Reply at 6.) Again here, the gatekeeper may not assess the evidence to determine factual disputes pursuant to a Rule 702 motion. *See Fletcher*, 196 F. Supp. 3d at 824; *Kawasaki*, 782 F.3d at 360. And objections to form and factual content apply to the weight to be accorded to Currier's testimony, not admissibility. *See Guardian Pipeline*, 486 F. Supp. 2d at 749; *14.38 Acres of Land*, 80 F.3d at 1077; *Powell*, 942 F. Supp. 2d at 690 ("[T]he [c]ourt's role here is not to determine the correctness of [the appraiser's] opinion but instead simply whether it is based upon a reasonable foundation."). Where, as here, Currier used a reliable method to appraise the Property, his testimony is admissible. Lake Bluff will have the opportunity to cross examine Currier at trial,

thus leaving for the trier of fact the determination as to how much weight to ascribe to Currier's opinion. *See Hawthorne*, 1993 WL 311916, at *5.

In declining to exclude MaRous's or Currier's opinions at this point, the court is mindful of the need, particularly in land valuation cases, to "proceed cautiously before removing from the [fact finder's] consideration expert assessments of value which may prove helpful." *See Vector Pipeline, L.P. v. 68.55 Acres of Land*, 157 F. Supp. 2d 949, 957 (N.D. Ill. 2001) (citation omitted); *Younglove Constr., LLC v. PSD Dev., LLC*, 782 F. Supp. 2d 457, 465 (N.D. Ohio 2011). Here, MaRous's and Currier's appraisals are not only "helpful," they are part of the construct created by the contracting Lease parties to determine the purchase option price. (R. 1-1, Compl. Ex. A at 12.) The contracting parties likely realized the possibility that the purchaser's appraiser may submit a lower valuation, and the seller's appraiser may submit a higher valuation, as occurred in this case. Buchanan's appraiser, Currier, valued the vacant Property at $295,000, while Lake Bluff's appraiser, MaRous, offered a valuation of the same vacant land at $675,000. The average of those two appraisals, $485,000, comes close to matching the joint appraiser's $493,100 valuation for the vacant land. (R. 57, Pl.'s Mot. at 7.) If the court were to exclude either MaRous's or Currier's appraisal, the resulting valuation would swing significantly in favor of the party whose expert appraisal was admitted, thereby upsetting the balance struck by the contracting parties.

The court also recognizes that Rule 702's gatekeeping role is different in this case because neither party demanded a jury. (See id. at 10.) In a bench trial, the

court need not determine expert admissibility before such testimony is presented. *See In re Salem*, 465 F.3d at 777. Nevertheless, the court must conduct a *Daubert* analysis before final disposition of this matter. *See id.*; *Kansas City S. Ry. Co. v. Sny Island Levee Drainage Dist.*, 831 F.3d 892, 900 (7th Cir. 2016). At this stage, the court declines to render either MaRous's or Currier's opinions inadmissible. *See Luce*, 469 U.S. at 41-42. The court may revisit its admissibility rulings during trial if MaRous's or Currier's testimony "turns out not to meet the standard of reliability established by Rule 702." *See In re Salem*, 465 F.3d at 777.

## Conclusion

For the foregoing reasons, Buchanan's and Lake Bluff's motions to exclude expert opinions are denied.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**