UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUCHANAN ENERGY (N), LLC, a Delaware limited liability company, | ) ) No. 15 CV 3851 ) |
| Plaintiff, | ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| LAKE BLUFF HOLDINGS, LLC, an Illinois limited liability company, | ) ) ) October 31, 2017 |
| Defendant. | ) |

# MEMORANDUM OPINION and ORDER

Plaintiff Buchanan Energy (N), LLC ("Buchanan") brought this suit against Defendant Lake Bluff Holdings, LLC ("Lake Bluff"), alleging that Buchanan is entitled to purchase real property from Lake Bluff pursuant to a purchase option in a lease agreement for a lower price than Lake Bluff's valuation. Lake Bluff counter-sued alleging that Buchanan breached the lease and should be evicted, or in the alternative, that Buchanan's appraisal was conducted in bad faith and should be disregarded. Before the court are the parties' cross-motions for summary judgment. For the following reasons, the parties' motions are granted in part and denied in part:

## Background[1]

Buchanan and Lake Bluff are successor parties in interest to a lease agreement dated September 22, 1989, involving property commonly known as 2 North Waukegan Road, Lake Bluff, Illinois ("Lease"). (R. 72, JSOF ¶¶ 2, 10; R. 72-1, Ex. A.) The property is a half-acre parcel improved with a gas station and a convenience store. (R. 72, JSOF ¶ 7.) Buchanan, a gas retailer, occupies the property and is the successor tenant to the Lease pursuant to a December 9, 2010 assignment from ExxonMobil Corporation. (Id. ¶¶ 2, 6, 12.) Lake Bluff is the owner and successor landlord of the property. (Id. ¶¶ 4, 11.) The previous landlords, Muriel Slack and Milton Smith ("predecessor landlords"), signed the Lease with the previous tenant, Mobil Oil Corporation ("predecessor tenant") (together with predecessor landlords, "predecessor parties"). (R. 72-1, Ex. A ¶ 1.) The Lease describes the leased property as:

> that certain parcel of land situated at NWC of Waukegan Rd. and Rockland Rd. Street, in the County of Lake, State of Illinois . . . together with any improvements thereon and the appurtenances and all right, title and interest of Landlord in and to land lying in all streets, highways and rights of way abutting on or appurtenant to the premises (all of said leased property [being] referred to in this lease as the "premises").

---

[1] Unless otherwise indicated, the following undisputed facts are taken from the parties' Joint Rule 56.1 Statements of Material Facts Not in Dispute ("JSOF"), (R. 72), and will be viewed in the light most favorable to each respective non-moving party, *see O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Lake Bluff also submitted its own additional facts attaching exhibits in support of those facts. (R. 75, Def.'s Stmt. of Uncontested Mat. Facts.) The court includes only those portions of the parties' statements of facts that are appropriately presented, supported, and relevant to the resolution of the pending motions for summary judgment.

(Id.) The Lease also provides that the predecessor parties "shall execute . . . a short form of lease for purposes of recording[,]" but that the "short form shall not, under any circumstances, be deemed to modify or amend any of the provisions of [the Lease] which shall, in all circumstances, prevail." (Id. ¶ 24.) In accordance with the Lease, the predecessor parties recorded a Memorandum of Lease in August 1990. (R. 72, JSOF ¶ 16; R. 72-2, Ex. B.) The Memorandum of Lease describes the "premises covered by said lease" as "all that certain parcel of land situated at NWC of Waukegan Road and Rockland Road in the County of Lake and State of Illinois[.]" (R. 72-2, Ex. B ¶ 1.)

The Lease anticipates that the tenant will use the leased property as a "retail drive-in facility . . . or for continued use for the storage and sale of petroleum and other products and services to be sold at the premises." (R. 72-1, Ex. A ¶ 9.) The Lease further provides that, in addition to the land itself, "buildings, improvements and equipment" may exist on the property and/or be added. (Id. ¶¶ 8-9.) Additionally, the Lease contemplates that the tenant will add improvements to the land to operate a gas station. (Id. ¶¶ 3, 8-10.) Under the Lease, any buildings, improvements, and equipment erected or installed by the tenant on the property "remain the property of Tenant." (Id. ¶ 8.) The Memorandum of Lease restates this provision as follows:

> Said lease grants Tenant the right to erect and install on the said premises such buildings, improvements and equipment as it may require . . . . No buildings, improvements and equipment erected, installed or owned by Tenant shall become a part of the real estate, but shall be and remain the property of Tenant . . . .

3

(R. 72-2, Ex. B ¶ 4.) Furthermore, the Lease specifies that the tenant "shall have the right to remove, change, demolish, replace or abandon any or all of [such buildings, improvements and equipment] or to enter to remove any or all of same at any time while this lease is in effect and for thirty (30) days thereafter." (R. 72-1, Ex. A ¶ 8.)

The Lease also gives the tenant "the option to purchase the premises free and clear of all liens and encumbrances for the sum" set forth in the Lease Rider after the end of the 17th year of the Lease and its renewal periods. (Id. ¶¶ 12, 13.) The Lease Rider, which is "attached to and made part of" the Lease, in turn states that the tenant "shall have the option to purchase the premises at any time at a purchase price determined by taking the average of three (3) appraisals." (Id. at 12; see R. 72, JSOF ¶ 18.) The Lease Rider provides that the landlord would choose an appraiser, the tenant would choose an appraiser, and the third appraiser would be "mutually agreed upon." (R. 72-1, Ex. A at 12.) On September 8, 2014, Buchanan provided written notice to Lake Bluff regarding its intent to exercise the purchase option. (R. 72, JSOF ¶ 17; R. 72-3, Ex. C.)

Buchanan retained real estate appraiser Daniel Currier to perform a land-only appraisal excluding improvements, which resulted in an appraised value of $295,000. (R. 72, JSOF ¶ 22; R. 72-5, Ex. E at 3.) Lake Bluff retained real estate appraiser Michael MaRous, who appraised the property at $675,000 as vacant and $1.2 million as improved. (See R. 72, JSOF ¶ 24; R. 72-6, Ex. F. at 4, 25.) The parties jointly retained real estate appraiser Dale Kleszynski, who appraised the

4

property at $535,000 as vacant and $1,070,000 as improved.[2]  (See R. 72, JSOF ¶ 25; R. 72-7, Ex. G at 5.)

In January 2015 the parties agreed to extend the Lease on a month-to-month basis on the same terms and conditions as provided in the Lease.  (R. 72, JSOF ¶ 13.)  On March 30, 2015, and April 10, 2015, Buchanan sent letters to Lake Bluff requesting that closing occur at the purchase price of $487,775 (the average of the three appraisals of the land as vacant).  (R. 72, JSOF ¶¶ 31-32; R. 72-8, Ex. H; R. 72-9, Ex. I.)  Lake Bluff responded with a letter on April 16, 2015, asserting that Buchanan had breached the terms of the purchase option and notifying Buchanan that its tenancy would be terminated at the end of May 2015.  (R. 72, JSOF ¶ 33; R. 72-10, Ex. J.)  No sale was completed and this suit followed.  (See R. 72, JSOF ¶ 33; R. 1, Compl.)

## Analysis

Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the

---

[2]  According to Buchanan, Kleszynski's appraisal values were based upon an incorrect square footage, which when corrected, results in an appraised value of $493,355 for the property as vacant. (R. 78, Pl.'s Mem. at 5 n.2.)

5

nonmoving party." *Id*. at 248. Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.    Judicial Estoppel

Before reaching the primary dispute in this case, the court first addresses Lake Bluff's contention that Buchanan is judicially estopped from arguing that the Lease is unambiguous. (See R. 79, Def.'s Resp. at 5-6.) Judicial estoppel typically prevents a litigant from succeeding in maintaining a certain position, and then later taking a contrary position, especially if doing so prejudices the other party. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citation omitted). Although the circumstances under which judicial estoppel may apply are not reducible to any general formulation of principle, relevant considerations typically include whether a party's later position is "clearly inconsistent" with its earlier position and whether judicial acceptance of the subsequent position would create "the perception that either the first or the second court was misled." *Id.* (citations and quotation marks omitted). Ultimately the application of judicial estoppel is left to the court's equitable judgment and discretion. *See In re Knight-Celotex*, 695 F.3d 714, 721 (7th Cir. 2012).

Here, Lake Bluff points to the fact that Buchanan argued at the motion to dismiss stage that "premises" in the Lease refers "only to the property, including any 'improvements', that was actually leased by the landlord to the tenant through

6

the 1989 Lease." (See R. 79, Def.'s Resp. at 6 (quoting R. 29, Pl.'s Resp. at 7).) Lake Bluff also cites Buchanan's complaint, which alleges that the gas station and convenience store were built by Buchanan's predecessor after the Lease commenced. (See id. at 7 (citing R. 1, Compl. ¶ 6).) In denying Lake Bluff's motion to dismiss, this court acknowledged that if Buchanan's predecessor did in fact expend money to add the improvements, the tenant under the Lease would now face "a second charge for the same improvements if Lake Bluff's interpretation of 'premises' is adopted." *Buchanan Energy (N), LLC v. Lake Bluff Holdings, LLC*, No. 15 CV 3851, 2015 WL 5173645, at *4 (N.D. Ill. Sept. 2, 2015). This court found that Buchanan had made a colorable claim, in the context of defeating a motion to dismiss, that the value of the "premises" under the Lease could be based only on "property that was leased to the tenant, including the land and any improvements thereon *at the time the Lease was made*." *Id.* (emphases in original).

Buchanan now argues after the benefit of taking discovery that whichever tenant actually built the improvements, and the existence of the improvements themselves, are factors that are irrelevant to the price of the property under the purchase option. (See R. 78, Pl.'s Mem. at 5-9.) Lake Bluff attributes the shift in Buchanan's position to the fact that discovery produced no evidence showing that either Buchanan or its predecessor tenant constructed any of the improvements on the property. (R. 79, Def.'s Mem. at 7.) Lake Bluff argues that because Buchanan prevailed at the motion to dismiss stage by taking a position different from its current stance, it is judicially estopped from now claiming that the Lease is

7

unambiguous and arguing that whoever built the improvements is irrelevant. (Id. at 6.)

The court declines, however, to apply judicial estoppel in this instance for a few reasons. First, the court denied Lake Bluff's motion to dismiss after taking all well-pleaded facts in Buchanan's complaint as true and viewing reasonable inferences in the light most favorable to Buchanan. *See Buchanan Energy (N)*, 2015 WL 5173645, at *2 (citations omitted). Concluding that Buchanan has stated a cognizable claim at the motion to dismiss stage is very different from finding that the claim has any merit. *See Alper v. Altheimer & Gray*, No. 97 CV 1200, 2002 WL 31133287, at *34 (N.D. Ill. Sept. 26, 2002). At the motion to dismiss stage, Buchanan only prevailed in persuading the court that its complaint gave Lake Bluff "fair notice of what the . . . claim is and the grounds upon which it rests," and that it "includes allegations that are enough to raise a right to relief above the speculative level." *See Buchanan Energy (N)*, 2015 WL 5173645, at *2 (citations omitted and internal quotations omitted). Because the court's acceptance of Buchanan's position at the motion to dismiss stage would not be inconsistent with its acceptance of Buchanan's current stance in the summary judgment context, the court's motion to dismiss decision does not weigh in favor of applying judicial estoppel. *See Shuffle Tech Int'l LLC v. Sci. Games Corp.*, No. 15 CV 3702, 2017 WL 3838096, at *8 (N.D. Ill. Sept. 1, 2017) (judicial estoppel "requires that the court accepted the earlier position such that its acceptance of the new position would lead to inconsistent determinations") (citing *New Hampshire*, 532 U.S. at 749). Other courts have

8

adopted similar reasoning in declining to apply judicial estoppel where the party's prior position was taken at the motion to dismiss stage. *See, e.g., Burns v. First Am. Bank*, No. 04 CV 7682, 2006 WL 3754820, at *5 (N.D. Ill. Dec. 19, 2006) ("It would be inconsistent with the federal pleading standards and the preliminary nature of a motion to dismiss to say that Plaintiffs 'prevailed' on a particular ground."); *Alper*, 2002 WL 31133287, at *34 n.56 ("Neither Defendants nor the court have located a case in which surviving a motion to dismiss in one proceeding constituted a victory sufficient to trigger judicial estoppel in a second.").

Second, Buchanan's arguments are not as contradictory as Lake Bluff alleges, although Buchanan's briefs muddy the waters on this point. In opposing Lake Bluff's motion to dismiss, Buchanan argued that a vacant-land appraisal was appropriate because the term "premises" in the Lease referred to the state of the land at the time the Lease was signed. (R. 29, Pl.'s Resp. at 7.) In making that argument, Buchanan assumed that the land was vacant and that its predecessor tenant constructed the property's improvements *after* signing the Lease. (See R. 1, Compl. ¶ 6.) But after conducting discovery and finding no evidence showing who built the improvements, (see R. 79, Def.'s Resp. at 7-8), Buchanan is now arguing that regardless of who built them, the Lease unambiguously gives Buchanan ownership rights over the improvements and that forcing it to pay for improvements it already owns would be "unreasonable and unfair," (see R. 78, Pl.'s Mem. at 5-9).

Buchanan fumbles its refutation of Lake Bluff's judicial estoppel argument by contending that "claim[ing] that the improvements were built by Buchanan's

9

predecessor" and "say[ing] it is unclear who built the improvements" is "not necessarily inconsistent." (See R. 81, Pl.'s Resp. at 7; R. 82, Pl.'s Reply at 2.) The court disagrees. In its complaint, Buchanan did not assert in general terms that *one* of its predecessors built the improvements, or that its predecessor tenant *may* have built the improvements, but rather that the predecessor tenant who signed the Lease *did* build the improvements. (See R. 1, Compl. ¶ 6.) By asserting that a particular entity constructed the improvements, Buchanan necessarily implied that it *knew* who constructed the improvements. However, Buchanan's current argument does not turn on who constructed the improvements. Rather, Buchanan's position at this stage in the proceeding is that it is *irrelevant* who improved the land because the Lease gives Buchanan "complete control and ownership" of the improvements "regardless of who erected or installed them." (R. 81, Pl.'s Resp. at 6.) And even though the way Buchanan supports its argument has shifted, the essence of Buchanan's argument—that it owns the improvements and should not have to pay for what it already owns—has not changed. (Compare R. 29, Pl.'s Resp. at 8-10, with R. 78, Pl.'s Mem. at 6-9.) This weighs against applying judicial estoppel.

Third, there is no indication that Buchanan proceeded in an unfair manner or somehow abused the court system. *See New Hampshire*, 532 U.S. at 749-51. This is not a case where a party concealed or manipulated information to make contradictory arguments to the detriment of the other party. *See Zedner v. United States*, 547 U.S. 489, 504-06 (2006); *see also Ogden Martin Sys., Inc. v. Whiting*

10

*Corp.*, 179 F.3d 523, 527 (7th Cir. 1999). Nor has Lake Bluff adequately explained how it is prejudiced by Buchanan's shift in strategy. *See New Hampshire*, 532 U.S. at 749. Rather than playing "fast and loose with the courts," *see InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003), it appears that Buchanan took a position prior to having the full benefit of discovery, and after finding certain evidence lacking, adjusted its arguments accordingly, (see R. 74, Def.'s Mem. at 2; R. 79, Def.'s Resp. at 5, 7-8; R. 83, Def.'s Reply at 1-2). This is not an uncommon sequence of events in litigation, and the court finds little reason to conclude that Buchanan was gaming the system in altering its strategy. Accordingly, Buchanan is not judicially estopped from arguing that who built the improvements is irrelevant and that the Lease unambiguously grants Buchanan ownership of the improvements.

**B.   Definition of "Premises"**

The court now turns to the heart of the dispute, which centers upon the meaning of the word "premises" in the Lease. Both parties seek summary judgment on Buchanan's claim that it is entitled to purchase the property at a price based on vacant-land appraisals. The parties agree that the substantive law of Illinois applies in this diversity case. *See Berrey v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 594 (7th Cir. 2014). Under Illinois law, rules of contract interpretation apply when construing provisions in a lease. *See Urban Sites of Chi., LLC v. Crown Castle USA*, 2012 IL App. (1st) 111880, ¶ 24. "In construing a contract, the court must determine and give effect to the parties' intentions at the time they entered into the agreement." *Id.* Where there is no ambiguity in the contractual language,

11

"the intention of the parties must be ascertained by the language used, not by constructions urged by the parties." *Napleton v. Ray Buick, Inc.*, 704 N.E.2d 864, 871 (Ill. App. Ct. 1998). Furthermore, in Illinois an unambiguous contract is interpreted by the court as a matter of law without use of parol evidence. *State Bank of Toulon v. Covey (In re Duckworth)*, 776 F.3d 453, 456 (7th Cir. 2014) (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)). The contractual language must be considered "as a whole, viewing each part in light of the others." *Szafranski v. Dunston*, 2015 IL App. (1st) 122975-B, ¶ 95. "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Id.* And, importantly, courts should "construe a contract reasonably to avoid absurd results." *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 902 N.E.2d 1178, 1190 (Ill. App. Ct. 2009).

Although the parties take opposing positions as to the meaning of the term "premises," both parties assert that the Lease's terms are unambiguous. Lake Bluff argues that the Lease defines "premises" to include improvements, and that any valuation conducted pursuant to the purchase option must therefore include the improvements. (R. 74, Def.'s Mem. at 1-2.) Buchanan contends that any appraisal including the property's improvements would result in an "unreasonable, inequitable and absurd outcome" because the Lease grants Buchanan ownership of the improvements and it should not have to "pay for that which it already owns[.]" (R. 78, Pl.'s Mem. at 2.)

Reading the Lease as a whole, the court finds that the term "premises" unambiguously includes the property's improvements. First, the Lease expressly defines "premises" as the land "together with any improvements thereon." (R. 72-1, Ex. A ¶ 1.) This definition comports with the ordinary meaning of the word as defined by Illinois courts, Black's Law Dictionary, Merriam Webster's, and some circuit courts. *See, e.g., Tobin v. Gluck,* 684 Fed. Appx. 61, 63 (2d Cir. 2017) ("The word ['premises'] is commonly understood to mean a 'house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses.'" (quoting Black's Law Dictionary (10th ed. 2014))); *Cain Rest. Co. v. Carrols Corp.*, 273 Fed. Appx. 430, 434 (6th Cir. 2008) (citing Merriam Webster's Collegiate Dictionary 920 (10th ed. 1997) (defining "premises" as "a tract of land with the buildings thereon")); *United States v. Griffin*, 827 F.2d 1108, 1114 (7th Cir. 1987) ("According to Black's Law Dictionary . . . premises means 'lands and tenements; an estate including land and buildings thereon.'" (citations omitted)); *Nelson v. Aurora Equip. Co.*, 909 N.E.2d 931, 935 (Ill. App. Ct. 2009) (citing Black's Law Dictionary definition of "premises" (citation omitted)); *People v. Davit*, 851 N.E.2d 924, 929 (Ill. App. Ct. 2006) (noting Black's Law Dictionary definition of "premises," but ultimately finding that the term was ambiguous as used in the trial court's order (citations omitted)). Buchanan characterizes the Lease's definition as "a single boilerplate provision" in an attempt to downplay its importance. (R. 78, Pl.'s Mem. at 7-8.) However, Buchanan does not dispute that this definition, boilerplate or not, is unambiguous on its face and expressly includes improvements in the "leased

property." (R. 72-1, Ex. A ¶ 1.) If the language in a contract is unambiguous, the intention of the parties must be ascertained by the language used, not by constructions urged by the parties. *Napleton v. Ray Buick, Inc.*, 302 Ill. App. 3d 191, 201 (1998). Furthermore, a defined term will be accorded that meaning wherever it appears. *See In re Shara Manning Props., Inc.*, 475 B.R. 898, 907 (Bankr. C.D. Ill. 2010) (citing *Alexian Bros. Health Providers Ass'n, Inc. v. Humana Health Plan, Inc.*, 330 F. Supp. 2d 970, 975 (N.D. Ill. 2004)). The Lease gives the tenant "the option[] to purchase the *premises*" and requires the landlord to deliver "title to said *premises* free and clear of all liens and encumbrances[.]" (See R. 72-1, Ex. A ¶ 12 (emphases added).) According to the Lease's own terms and definition, the purchase option contemplates the purchase of both the land and its improvements.

Nevertheless, Buchanan relies on language in the Lease giving Buchanan the right to "remove, change, demolish, or abandon" all of the land's improvements at any time to argue that it owns the improvements. (See R. 78, Pl.'s Mem. at 6 (citing R. 72-1, Ex. A ¶ 8).) Buchanan insists that it would be absurd to "force Buchanan to pay for improvements it already owns." (Id. at 8-9.) But Buchanan exaggerates the absurdity of adhering to the Lease's express definition of "premises." First, as Buchanan points out, the Lease contemplates that the tenant would add improvements to the land related to the storage and sale of petroleum. (See R. 72-1, Ex. A ¶ 3.) Indeed, the paragraph addressing the tenant's use and control of the improvements begins by guaranteeing that the tenant "shall have the right to use

14

the premises in any lawful manner and shall have the right to erect and install such buildings, improvements and equipment that it may require[.] (Id. ¶ 8.) To that end, the Lease gives the tenant the right to tear down "any improvements of Landlord on the leased land . . . without obligation to restore or replace same and without accountability to the Landlord." (Id.) When read in the proper context and in light of the Lease as a whole, that provision facilitates the tenant's use of the property for the purposes stated in the Lease. In other words, the court agrees with Lake Bluff that this portion of the Lease reflects the fact that "[a]s is typical of this type of lease transaction, the tenant receive[s] the benefit of indicia of ownership of the improvements[] without having to expend funds to actually purchase the Property." (See R. 74, Def.'s Mem. at 10.) Buchanan notes that it could have avoided paying the improved value of the property by simply removing the improvements and creating a vacant site prior to exercising the purchase option. (See R. 81, Pl.'s Resp. at 4-5.) But then it also would have lost the benefit of owning land that already has the improvements necessary for operating its gas retail business.

As for Buchanan's argument that it would be absurd for it to be forced to "pay for improvements it already owns," (see R. 78, Pl.'s Mem. at 8-9), there is a difference between "owning" improvements in the sense that one has the right to use, alter, or dispose of them, and "owning" them in the sense that one purchased or erected the improvements themselves. As Lake Bluff points out, this aspect of Buchanan's absurdity argument is less persuasive because there is no evidence

15

Buchanan would be purchasing the improvements twice under the Lease's definition of "premises." (See R. 79, Def.'s Mem. at 8, 10.) In fact, there is no evidence Buchanan purchased the improvements even once. (Id. at 10.)

Furthermore, Buchanan's argument that the Lease's definition of "premises" would lead to unreasonable results rests on the assumption that Buchanan's own interpretation would not also lead to absurd consequences. But Buchanan's reading of the word "premises" would render significant portions of the Lease illogical. For example, the Lease provides that the certificate of occupancy "shall be for occupancy after [the tenant] completes a rebuild of the premises." (R. 72-1, Ex. A ¶ 2.) Because "rebuild" implicates buildings, and because certificates of occupancy are not issued for undeveloped land, this provision is nonsensical if "premises" does not include buildings and improvements. *See Cain Rest. Co.*, 273 Fed. Appx. at 435 (citing Black's Law Dictionary (8th ed. 2004) (defining "certificate of occupancy" as a document indicating that "a building complies with zoning and building ordinances")). The Lease also refers more than once to "products and services to be sold at the premises." (R. 72-1, Ex. A ¶¶ 3, 9.) Under Buchanan's reading of "premises" these provisions would refer, strangely, to sales derived only from the land itself and not from the gas station and convenience store on the land. *See Cain,* Fed. Appx. at 434-35 ("Under [the defendant's] reading of 'Premises,' 'Gross Sales' includes only sales 'at, in or from' the land—and does not include sales 'at, in or from' the buildings on the land[.]"). Similarly confounding would be references in the Lease to "using the premises as a retail drive-in facility." (R. 72-1, Ex. A ¶¶ 3,

9.)  This language shows that contrary to what Buchanan contends, the term "premises" as used in the Lease comports with the word's ordinary meaning, which includes improvements.

Finally, Buchanan points to the Memorandum of Lease, which does not explicitly include improvements in its description of the premises. (See R. 72-2, Ex. B ¶ 1.) However, the Lease expressly states that the Memorandum of Lease "shall not, under any circumstances, be deemed to modify or amend any of the provisions of [the Lease] which shall, in all circumstances, prevail." (R. 72-1, Ex. A ¶ 24.) Although this court found at the motion to dismiss stage that the Memorandum of Lease "supports Buchanan's interpretation" and "reasonably may be read as shedding light on . . . the predecessor parties' intent," *Buchanan Energy (N), LLC*, 2015 WL 5173645, at *2, *4, the absence of improvements in the Memorandum of Lease's description does not amend the express definition in the lease, (R. 72-1, Ex. A ¶ 1). A favorable finding at the more lenient motion to dismiss stage does not guarantee a party will prevail at the more demanding summary judgment stage. *See McKinnie v. Dart*, No. 14 CV 9588, 2015 WL 5675425, *4 (N.D. Ill. Sept. 24, 2015). In light of the facts set forth by both parties and construing the Lease as a whole, the court finds that the term "premises" as used in the Lease—including with regards to the purchase option—unambiguously includes improvements. Accordingly, the court grants Lake Bluff's motion and denies Buchanan's motion as to Buchanan's declaratory judgment and specific performance claims.

## C. Lake Bluff's Counterclaims

Both parties have also moved for summary judgment on Lake Bluff's counterclaim seeking possession of the property under the Illinois Forcible Entry and Detainer Act ("Act"), 735 ILCS 5/9-101, *et seq*. (See R. 34, Def.'s Answer and Countercl. at 16.) The Act provides in relevant part that "the person entitled to the possession of lands or tenements may be restored thereto . . . when any lessee of the lands or tenements . . . holds possession without right after the termination of the lease or tenancy by its own limitation, condition or terms, or by notice to quit or otherwise." 735 ILCS 5/9-102(a). Here, Lake Bluff contends that the Lease expired, Buchanan received proper notice demanding possession of the property, and Buchanan is holding possession without right. (R. 74, Def.'s Mem. at 15.) Specifically, Lake Bluff argues that because providing an appraisal that included the improvements was a condition precedent to exercising the purchase option, Buchanan failed to properly exercise its option. (Id. at 14-15.) The court disagrees.

The Lease provides that the purchase option "may be exercised by the giving of written notice from Tenant to Landlord." (R. 72-1, Ex. A ¶ 12.) The Lease also requires that the option be exercised after the end of the 17th year of the Lease and its renewal periods, but Lake Bluff is not disputing that Buchanan's written notice was timely. (See id. ¶ 13.) The Lease does not condition the exercise of the option on a proper appraisal, and because Illinois law requires that options be exercised in strict accordance with their terms, *see Keene Corp. v. Chapple*, 716 F.2d 475, 477 (7th Cir. 1983), courts have consistently found that timely notice may be all that is

18

required for effective exercise if the Lease so provides, *see, e.g., Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1273 (7th Cir. 1996) ("Here the condition for acceptance was nothing more than timely notice."); *In re Orla Enters.*, 399 B.R. 25, 29 (Bankr. N.D. Ill. 2009) ("Brandy's timely notice of its intention to exercise the option was sufficient to properly exercise it."); *Wilson Sporting Goods Co. v. Penn Partners*, No. 03 CV 5236, 2004 WL 2445372, at *5 (N.D. Ill. Oct. 28, 2004) (citing cases in which "the only condition precedent for exercising the option was notification by the optionee to the optionor"). Contrary to what Lake Bluff contends, the Lease's appraisal requirements relate to the execution of the purchase *after* the option is exercised. *See, e.g., Wilson Sporting Goods Co.*, 2004 WL 2445372, at *5 (noting cases in which requirements for payment methods and the execution of separate agreements in relation to the option "were related to the subsequent performance of the contracts, not to the conditions precedent to exercise of the option"); *Gaskins v. Walz*, 409 Ill. 40, 45 (1951) (finding that "[t]he demand for an abstract showing merchantable title was made in reference to what should happen as to performance during the period of the executory contract" after an option was exercised). The court therefore finds that Buchanan properly exercised its option to purchase the property because it gave timely written notice of its intent to do so. Accordingly, the court grants Buchanan's motion for summary judgment as to Lake Bluff's counterclaim seeking possession of the property and denies Lake Bluff's motion as to that claim.

As for Lake Bluff's other claim that Buchanan's land-only appraisal conducted by Currier was done in bad faith, because the court finds that Buchanan's appraisal must include improvements and should therefore either be redone or revised for the purchase to go forward, the second count in Lake Bluff's counterclaim is moot.

## Conclusion

For the foregoing reasons, the parties' motions for summary judgment are granted in part and denied in part. Lake Bluff's motion is granted as to Buchanan's declaratory judgment and specific performance claims, but denied as to Lake Bluff's Illinois Forcible Entry and Detainer Act and declaratory judgment claims. Buchanan's motion is granted as to Lake Bluff's counterclaims, but denied as to Buchanan's claims. To determine the price of the property pursuant to the purchase option, each of the three appraisals must include the improvements.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**